# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20577-Civ-Williams/Sanchez

DOROTHY BAZAN,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES, INC.,
a foreign Corporation,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Motion for Summary Judgment (ECF No. 104) filed by the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, Inc. ("Carnival").[1]  In her Amended Complaint, Plaintiff Dorothy Bazan has asserted a claim of negligence against Carnival based on theories of negligent failure to control a crowd, negligent maintenance of a staircase, and negligent failure to warn of a dangerous condition.  ECF No. 4.  Carnival now seeks summary judgment on that claim of negligence.  Following a careful review of the parties' filings, the pertinent portions of the record, and the applicable law, and being otherwise duly advised on the matter, the undersigned **RESPECTFULLY RECOMMENDS** that Carnival's motion be **GRANTED**.

---

[1] On July 1, 2022, Magistrate Judge McAliley entered an Order Staying the Case and Setting a Status Conference, ECF No. 82, which stayed the case until the Court's March 21, 2024 Order lifting the stay on March 29, 2024, ECF No. 122.  United States District Judge Kathleen M. Williams has referred Carnival's Motion for Summary Judgment to the undersigned for a Report and Recommendation.  ECF No. 118.

## I.    BACKGROUND

On February 11, 2019, the Plaintiff boarded the Carnival *Paradise* cruise ship for a 6-day cruise.  ECF No. 103 (Carnival's Statement of Undisputed Material Facts) at ¶ 1; ECF No. 109 (Plaintiff's Response to Carnival's Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts) at ¶ 1.  The next day, on February 12, the Plaintiff attended a shopping program in the ship's Normandie Lounge.  ECF No. 109 at ¶ 12; ECF No. 112-1 at 1.  The Normandie Lounge is an auditorium containing rows of seating separated by a main center aisleway that leads to a central stage located at the front of the auditorium.  *See, e.g.*, ECF No. 109-2 at 2 (photograph 1 in E.W. Henry report); ECF No. 109-3 at 3; ECF No. 102-1.  A single flared staircase is located at the end of the center aisle and leads up to the stage, and the sides of that staircase widen and curve out at the base into flared steps that have been referred to as "stringers."  *See, e.g.*, ECF No. 109-3 at 1, 3-5; ECF No. 109-2 at 2; ECF No. 102-1.  As part of the event attended by the Plaintiff, a raffle was being conducted, and the Plaintiff and other event participants were invited to approach the stage and place ballots into a ballot box located on the floor of the auditorium stage next to the center staircase.  ECF No. 109 at ¶ 12.

Surveillance video from the Lounge, ECF No. 102-1 ("the Surveillance Video"), shows that the Plaintiff walked down the middle aisleway of the auditorium until she reached the base of the staircase.  The Plaintiff then walked up to and around the curved base of the staircase to get to the ballot box, which was located on the floor of the stage just to the right of the staircase.  *Id*.  According to the Plaintiff, she saw the staircase, which she had no difficulty seeing, and she was aware of its presence.  ECF No. 109 at ¶ 20; *see* ECF No. 103-1 at 48-51.  There were no more than four individuals in line for the ballot box at the time the Plaintiff approached the stage, and

the Plaintiff was alone at the stage as she dropped her card in the ballot box.[2]  ECF No. 102-1;
ECF No. 103 at ¶ 6; ECF No. 109 at ¶ 6.  The Plaintiff, still standing by herself at the foot of the
stage, then turned away from the stage and toward the staircase as three people began to file in line
behind her.  ECF No. 102-1.  No one stood between the Plaintiff and the staircase.  *Id*.  While she
was turned toward the staircase and without looking down, the Plaintiff then tripped on the side of
the staircase and fell to the ground.  *Id*.; ECF No. 103 at ¶ 2; ECF No. 109 at ¶ 2.  According to
the Plaintiff, although she knew that she was next to the staircase, ECF No. 103-1 at 53-54, she
did not look down at the floor or the staircase and did not notice the curved base of the staircase
because she "didn't pay attention" to it.  ECF No. 109 at ¶ 20; ECF No. 103-1 at 49-51, 53-54.
The Plaintiff did not come into physical contact with any person during the incident.  ECF No. 109
at ¶ 10; *see* ECF No. 103-1 at 53; ECF No. 102-1.

## II.    LEGAL STANDARD

### A.    Summary Judgment

"Summary judgment is appropriate when 'there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law.'"  *Luke v. Gulley*, 50 F.4th 90, 95
(11th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The Court must view the record and all factual
inferences in the light most favorable to the non-moving party and decide whether "the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law."  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th
Cir. 1997) *(*quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)); *see also, e.g.*,

---

[2] After approaching the stage, the first of the four individuals in line in front of the Plaintiff walked
back toward the center aisle, around and then away from the Plaintiff, and around the staircase;
the next three individuals turned to the right and walked along the stage away from the Plaintiff
and the staircase, leaving the Plaintiff alone at the foot of the stage.  ECF No. 102-1.

*Luke*, 50 F.4th at 95.  The existence of a factual dispute by itself is not enough to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004)); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("For factual issues to be considered genuine, they must have a real basis in the record.") (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); it must provide "significant, probative evidence demonstrating the existence of a triable issue of fact," *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quoting *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).  The mere existence of a "scintilla" of evidence is not enough; there must be sufficient evidence to show that a reasonable jury could return a verdict for the non-moving party.  *See Anderson,* 477 U.S. at 252; *see also Shiver*, 549 F.3d at 1343 ("Speculation does not create a *genuine* issue of fact.") (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)).

When the non-movant bears the burden of proof at trial, the moving party may obtain summary judgment by establishing the nonexistence of a genuine issue of material fact as to any

essential element of a non-moving party's claim or affirmative defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In that situation, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323. Instead, the moving party may discharge its burden by showing the Court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute" in order to prevail on a motion for summary judgment. Fed. R. Civ. P. 56(c)(1); *see also Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-CIV, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015).

## B.   Maritime Negligence

Maritime law governs the liability of a cruise liner for a passenger's slip and fall. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). In maritime tort cases, courts rely on general principles of negligence law. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). Accordingly, to prevail on a maritime negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Id.* (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)); *see also, e.g.*, *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp. 3d 1312, 1316 (S.D. Fla. 2016).

Cruise ship operators owe their passengers a duty of reasonable care, that is, a duty not to unreasonably create or cause a hazardous condition that causes injury to a passenger. *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015). "For a duty to arise, Carnival must

5

'have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. [Carnival's] liability thus hinges on whether it knew or should have known about the [risk-creating condition].'" *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam)).  Cruise ship operators must also "warn passengers of known dangers that are neither apparent nor obvious to passengers." *Lancaster*, 85 F. Supp. 3d at 1344; *see also, e.g.*, *Guevara*, 920 F.3d at 720 n.5 ("An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious."). "On the other hand, there is no duty to warn passengers of open and obvious dangers," that is, "those that should be obvious by the ordinary use of one's senses." *Lancaster*, 85 F. Supp. 3d at 1345.  A cruise ship operator, moreover, "is not liable to passengers as an insurer, but only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984); *see also, e.g.*, *Salazar*, 188 F. Supp. 3d at 1316.

## III.    DISCUSSION

### A.    There Is No Evidence that Carnival Negligently Failed to Control a Crowd that Caused Injury to the Plaintiff.

In a negligence claim based on a theory of negligent failure to control a crowd, a cruise line operator's general duty of care has been described as a duty "not to unreasonably create or allow a crowd to form . . . such that the crowding causes injuries to passengers." *Lancaster*, 85 F. Supp. 3d at 1345 (applying general duty of care not to unreasonably create or cause a hazardous condition that causes injury in the context of a crowd).  Here, Carnival is entitled to summary judgment on this theory of negligence because (1) there is no evidence of a crowd; (2) Carnival had no duty to control the handful of orderly individuals near the Plaintiff at the time of the

incident; and (3) there is no evidence that the individuals near the Plaintiff at the time of the incident caused her injury.

      1.  <u>There Is No Evidence of a Crowd.</u>

Although the Plaintiff has claimed that the ballot box "was surrounded by a crowd of people, all rushing to the front of the Lounge," ECF No. 4 at ¶ 11; that "the auditorium [was] full of people," ECF No. 110 at 5-6; and that there were "probably about ten" people near the ballot box and "probably about five or six" near the base of the staircase when the Plaintiff fell, ECF No. 103-1 at 52, the record evidence in this case renders the Plaintiff's account incredible.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). For that reason, when an incident is recorded and the video "obviously contradicts" the plaintiff's version of events, courts will accept the video's depiction of the events as controlling. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible."). But where the video does not clearly depict the events and there is evidence supporting both versions of events, courts must accept the non-movant's version. *Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018).

Here, the Surveillance Video "obviously contradicts" the Plaintiff's version of the events. *Pourmoghani-Esfahani*, 625 F.3d at 1315; *see* ECF No. 102-1. The Video incontrovertibly shows that there were not ten people gathered near the ballot box or five or six people gathered around the bottom of the staircase railing when Plaintiff fell. *See* ECF No. 102-1. There was no "rushing"

crowd.  *Id.*  Contrary to the Plaintiff's testimony, the Surveillance Video shows that the Plaintiff walked up to and around a prominent and very visible flaring staircase at the center of the Normandie Lounge stage as she approached the ballot box on the stage.  *Id.*  No more than four individuals preceded the Plaintiff in line for the ballot box, and by the time the Plaintiff dropped her ballot into the box, she was alone at the stage.  *Id.*  She was also alone when she turned back toward the staircase, and when she fell, only three other individuals had joined the line in an orderly, single-file fashion behind her.  *Id.*  Nothing and no one stood between the Plaintiff and the staircase.  *Id.*  At any given time up to and during the Plaintiff's fall, there was never even a full handful of people near the Plaintiff.  Only after the Plaintiff fell did additional people from the audience move to the front of the auditorium to assist the Plaintiff.  *Id.*  The incontrovertible record in this case thus requires rejection of the Plaintiff's account of the presence of a crowd, much less a "rushing" crowd of fifteen or sixteen people.  *See* ECF No. 4 at ¶ 11.

The Surveillance Video similarly contradicts the Plaintiff's argument that Carnival caused a crowd to form by "direct[ing] and encourag[ing] passengers to crowd into the small space, with only one clear walkway in or out."  ECF No. 110 at 6.  Beyond the fact that there was no crowd, the video record also establishes that Carnival did not direct passengers into a small space with only a single exit for those approaching the ballot box on the stage.  *Compare* ECF No. 4 at ¶ 10 *with* ECF No. 102-1.  Indeed, three of the individuals who approached the stage ahead of the Plaintiff walked to the right along the front of the stage and away from the staircase, leaving the area without again passing by the staircase.  ECF No. 102-1.

Given the incontestable circumstances depicted in the Video, the undersigned "accept[s] the [Surveillance V]ideo's depiction of the events as controlling" and finds that the Plaintiff's testimony as to the creation or existence of a crowd is incredible.  *Pourmoghani-Esfahani*, 625

8

F.3d at 1315; *Morton*, 707 F.3d at 1284.  After viewing the Surveillance Video, a reasonable jury simply could not find for the Plaintiff that she encountered a crowd during the incident that is the subject of her claim.  *See Anderson*, 477 U.S. at 248.  The Video thus establishes the absence of a genuine issue of material fact as to the creation or existence of a crowd, and, as a result, summary judgment is appropriate on the question of the existence of a crowd.

      2.   <u>Carnival Had No Duty to Control the People Near the Plaintiff at the Time of the Incident.</u>

The Plaintiff's claim also independently fails because there is no evidence that Carnival breached any duty to the Plaintiff concerning the people in the Normandie Lounge.  To prevail on her claim, the Plaintiff must establish that the people near the Plaintiff at the time of her injury required "control" or presented a reasonably foreseeable danger, and that Carnival failed to control such individuals, breaching its duty.  *Compare Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1306-09 (S.D. Fla. 2021) (denying defense motion for summary judgment on plaintiff's claim of negligent failure to control a crowd where "there [was] an abundance of evidence that the guest services area where Plaintiff suffered his injury was filled with angry passengers and a large crowd" and "Carnival knew or should have known of the unruly behavior of its passengers . . . and did nothing to calm them or otherwise protect other passengers in the area") *with Fuentes v. Classica Cruise Operator Ltd, Inc.*, No. 19-CV-60883, 2020 WL 6276299, at *5 (S.D. Fla. Sep. 11, 2020) (granting summary judgment on plaintiff's negligence claim where plaintiff failed to show that, prior to plaintiff's altercation with another passenger, the crowd that had formed was "unruly" and posed a danger), *report and recommendation adopted*, 2020 WL 6730826 (S.D. Fla. Nov. 16, 2020), *aff'd*, 32 F.4th 1311 (11th Cir. 2022); *see also Lancaster*, 85 F. Supp. 3d at 1346 (S.D. Fla. 2015) ("Defendant has a duty not to unreasonably create or allow crowds to form . . . in a manner hazardous to passengers.").

However, as discussed above, the Plaintiff's account that the individuals in the Normandie Lounge were "rushing" to the stage is not to be credited on summary judgment because it is "obviously contradict[ed]" by the Surveillance Video, which shows that the few individuals who were present around the Plaintiff were calm and orderly and walking at an ordinary pace. *Pourmoghani-Esfahani*, 625 F.3d at 1315; *see also* ECF No. 102-1. Thus, Carnival did not have or breach a duty to control those individuals. The mere fact that the Plaintiff was injured during Carnival's shopping event does not mean that the individuals who attended the event presented a foreseeably unsafe or dangerous condition. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. Nov. 20, 2006) ("The mere fact that an accident occurred does not give rise to a presumption of a dangerous condition."); *Fuentes*, 2020 WL 6276299, at *5 ("there is nothing inherently dangerous about standing in line").

3.  There Is No Evidence that the People Near the Plaintiff Caused Her Injury.

Summary judgment is also warranted on the causation element of the Plaintiff's claim that Carnival negligently failed to control a crowd because there is no evidence that anyone near the Plaintiff caused her injury. It is clear from the Surveillance Video that no one stood between the Plaintiff and the stairs after she placed her ballot in the ballot box and before she fell. ECF No. 102-1. The Surveillance Video also shows, and the Plaintiff confirmed in her deposition, that she did not come into physical contact with any other person when she fell. ECF No. 102-1; ECF No. 103-1 at 53:14-21. The Plaintiff further conceded that "the crowd did not physically harm [her]." ECF No. 110 at 5.

Here, where there is no evidence of a crowd and the Plaintiff has pointed to no evidence that shows that any of the few individuals in the Plaintiff's vicinity did anything to cause the Plaintiff's fall, the mere fact that the Plaintiff fell and was injured does not, on its own, establish

or give rise to an inference of causation. *See, e.g.*, *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 959 (11th Cir. 2014) (causation inference unwarranted); *Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313, 1321 (S.D. Fla. 2019) (granting summary judgment on causation where plaintiff's theory of causation was based on speculation). Rather, the Surveillance Video demonstrates an absence of causation: the short line to the stage was orderly; the individuals in line before the Plaintiff were able to navigate around the other individuals in the line to drop their ballots into the box on the stage and then exit the stage area without incident; and no one in the line came into contact with the Plaintiff or did anything to cause the Plaintiff's fall. *See* ECF No. 102-1. Given the video evidence and the absence of any credible evidence to establish that the individuals in line caused the Plaintiff's fall, Carnival is entitled to summary judgment on the issue of causation on Plaintiff's claim of negligent failure to control a crowd.

**B.    There Is No Evidence that Carnival Negligently Maintained the Staircase at Issue and Thereby Caused the Plaintiff Injury.**

Next, the Plaintiff claims that Carnival was negligent for failing to properly "inspect and maintain the steps of the Normandie Lounge's stage staircase." ECF No. 4 at ¶ 15. Carnival is entitled to summary judgment on this issue because there is no evidence in the record establishing that (1) Carnival breached a duty to maintain or inspect the staircase; or (2) the condition of the staircase caused the Plaintiff's injuries. *See Celotex Corp.*, 477 U.S. at 325; *see also, e.g.*, *Roberts v. Carnival Corp.*, No. 1:19-cv-25281-KMM, 2021 WL 3887819, at *11 (S.D. Fla. May 25, 2021) (granting summary judgment in favor of a cruise line where "there [was] no record evidence of any failure by the [cruise line] to maintain the subject threshold or the surrounding area"), *aff'd*, No. 21-11792, 2022 WL 2188010 (11th Cir. June 17, 2022).

1. <u>Carnival Did Not Negligently Maintain the Staircase by Failing to Keep It Well-Painted and Free of Paint Chipping.</u>

To begin, there is no evidence that Carnival negligently maintained the staircase where the Plaintiff tripped.  The Plaintiff relies on the existence of chipped paint on the staircase and a Carnival maintenance work order from September 2018 that detailed the repair of chipped paint on the base of the staircase to support her claim for negligent maintenance of the staircase.  However, the Plaintiff has not established that paint chipping on the staircase presented any foreseeable hazard to passengers, that Carnival owed passengers a duty to keep the staircase well painted and free of paint chipping, or that the chipping of paint on the staircase in any way caused her injury.  Indeed, the Plaintiff does not, and cannot under these facts, explain how a staircase without chipped paint would have been any safer or would have prevented her fall.  Accordingly, Carnival is entitled to summary judgment on Plaintiff's claim that it negligently maintained the staircase by not keeping it well painted and free of paint chipping.  *See, e.g.¸ Guevara*, 920 F.3d at 720.

2. <u>Carnival Did Not Breach any Duty by Having a Flared Staircase in the Normandie Lounge.</u>

To the extent that Plaintiff's claim of negligent maintenance of the staircase is premised on the theory that Carnival breached a duty to passengers simply by maintaining or having a flared staircase that leads to the center of the stage of the Normandie Lounge, that claim also fails.  While a cruise ship operator owes its passengers a duty not to unreasonably create or cause a hazardous condition that can cause injury to a passenger, *see, e.g.*, *Lancaster*, 85 F. Supp. 3d at 1345, for such a duty to arise, the cruise ship operator "must 'have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.  [Carnival's] liability thus hinges on whether it knew

or should have known about the [risk-creating condition].'" *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam)); *see also, e.g.*, *Keefe*, 867 F.2d at 1322 (holding that "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, *as a prerequisite to imposing liability*, that the carrier had actual or constructive notice of [a] risk-creating condition") (emphasis added).   General knowledge that a condition exists, however, is not by itself sufficient; rather, the cruise ship operator must also know that the condition is dangerous.  *See Chaparro*, 693 F.3d at 1336.

Here, the Plaintiff does not dispute that Carnival did not have actual notice that the staircase created a danger.  *See* ECF No. 110 at 6-7.  Indeed, there is no evidence of such actual notice.  The Plaintiff has also failed to present evidence of any "substantially similar" prior incidents that could establish that Carnival had constructive notice that the flared staircase presented an unreasonably dangerous condition.  *Compare Newell v. Carnival Corp.*, No. 15-CV-24499, 2017 WL 5513634, at *3 (S.D. Fla. Nov. 16, 2017) (granting summary judgment where plaintiff failed to produce evidence of substantially similar prior accidents) *with Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (denying summary judgment where other passengers had slipped in the same spot and expert evidence concluded that the deck was unreasonably slippery when wet).  There is no record of any prior incidents or complaints involving the staircase at issue or the surrounding area, nor is there evidence of any prior incidents involving similar staircases leading up to a stage on any other of the Carnival *Paradise*'s sister-ships.  *See* ECF No. 103 at ¶¶ 26-28; ECF No. 109 at ¶¶ 26-28; ECF No. 103-6 at 19-20, 50-51.

Although the Plaintiff points to chipped paint on the staircase to establish that Carnival knew or should have known that the staircase presented a danger, *see* ECF No. 110 at 7-8, that

argument is also unavailing.  The Plaintiff can point to no evidence showing that chipped paint on the staircase presented any hazard that could cause injury to a passenger.  The Plaintiff also can point to no evidence that the chipped paint gave Carnival actual or constructive notice that the staircase presented a danger to its passengers.  As previously discussed, there is simply no evidence that anyone had previously fallen or been injured due to the staircase, and, aside from rank speculation, there is no evidence that the chipped paint on the staircase was the result of anyone ever tripping, falling, or suffering injury due to the staircase.  On this record, a reasonable jury simply could not find that chipped paint on the staircase caused the Plaintiff's injury or that the presence of chipped paint on the staircase placed Carnival on notice that the staircase presented an unreasonable danger to its passengers.  *See, e.g.*, *Anderson*, 477 U.S. at 248; *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation omitted)); *Salazar*, 188 F. Supp. 3d at 1319 (explaining that "maritime law does not support a stand-alone claim based on a cruise line's alleged duty to take actions to reduce or eliminate foreseeable risks before they manifest, where such claim is unconnected to [the passenger's] specific accident") (internal quotations omitted).

The Plaintiff's reliance on the staircase's asserted deviations from a number of standards from the National Fire Protection Association, the Florida Building Code, and the Americans with Disabilities Act, *see* ECF No. 110 at 6-7, also fails to establish that the staircase in this case presented an unreasonably dangerous condition or that Carnival had constructive notice of any such condition.  Indeed, the Plaintiff has failed to establish that these standards are applicable in this case or that they placed Carnival on constructive notice that the staircase presented an unreasonable danger that would cause passengers to fall.  First, the National Fire Protection

Association 101 Life Safety Code, relied upon by the Plaintiff, "addresses minimum building design, construction, operation, and maintenance requirements necessary to protect building occupants from danger caused by fire, smoke, and toxic fumes."  Information Sheet on NFPA 101, https://docinfofiles.nfpa.org/files/AboutTheCodes/101/NFPA101FactSheet0809.pdf.   This case, however, does not present any issues concerning Carnival's duty to protect passengers from fire, smoke, toxic fumes, or similar emergencies, and the Plaintiff has failed to explain how those standards are applicable to this case.  Neither does this case involve protection from discrimination based on disability or the removal of barriers to the disabled.  Indeed, the Plaintiff has neither alleged that she was disabled nor presented any evidence of a disability.  *See* ECF No. 4.  Given these circumstances, the Plaintiff has failed to establish that the Americans with Disabilities Act and the standards promulgated under that Act to assist the disabled are applicable in this case. Additionally, the Plaintiff's own expert conceded that neither the National Fire Protection Association 101 Life Safety Code: 2015 nor the Florida Building Code govern cruise ships like the *Paradise* ship that is involved in this case.  *See* ECF No. 103-3 at 63-65, 69.  While the Plaintiff and its expert nonetheless maintain that Carnival should have adhered to the various standards they have referenced, the Plaintiff has failed to establish that the referenced standards are applicable to the circumstances presented in this case.  *See, e.g.*, *Whelan v. Royal Caribbean Cruises Ltd.,* No. 1:12-CV-22481-UU, 2013 WL 5595938, at *4 (S.D. Fla. Aug. 12, 2013) ("The ADA standards . . . are not applicable to claims that arise from cruise-ship slip-and-fall cases.  The Florida Building Code, which may be applicable on dry land in this forum, does not apply to cruise ships.  Finally, the NFPA's *Life Safety Code* is irrelevant . . . given that Plaintiff has not alleged that Decedent's injury resulted from Defendant's failure to conform to fire safety standards.") (citation omitted).

Even so, were the standards applicable here, the failure to meet industry standards, on its own, is insufficient to put a cruise operator on constructive notice of a dangerous condition. *See Francis v. MSC Cruises, S.A.*, No. 21-12513, 2022 WL 4393188, at *3-4 (11th Cir. Sept. 23, 2022) (explaining that Eleventh Circuit has "not held that failure to meet industry standards, standing alone, puts a cruise line on notice of a dangerous condition" and affirming summary judgment for the defendant cruise operator where, despite evidence of departure from industry standards, there was an absence of evidence showing that the cruise operator "knew or should have known" that its failure to comply with industry standards had created a dangerous condition).

Given the undisputed facts in the record, Carnival has established that there is no genuine dispute that Carnival did not have actual or constructive notice that the flared staircase leading to the center of the Normandie Lounge's stage presented an unreasonable danger to its passengers. Accordingly, Carnival is entitled to summary judgment on Plaintiff's claim that Carnival was negligent in having or maintaining the flared staircase to the stage of the Normandie Lounge.

## C.     There Is No Evidence That Carnival Failed to Warn the Plaintiff of Any Hazardous or Dangerous Conditions.

The Plaintiff also alleges in her Complaint that the Defendant failed to warn her of two dangerous conditions: the handful of people around her at the time of incident and the curved base of the staircase over which she tripped. ECF No. 4 at ¶¶ 16-17. Here, both theories of negligent failure to warn fail.

Cruise ship operators must warn passengers of known dangers that are neither apparent nor obvious to passengers. *Lancaster*, 85 F. Supp. 3d at 1344. They have no duty, however, to warn passengers of known dangers that are open and obvious. *See Keefe*, 867 F.2d at 1322; *see also Chaparro*, 693 F.3d at 1337. An open and obvious condition is one that should be obvious by the ordinary use of one's senses. *See Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345-46 (S.D.

Fla. Dec. 31, 2015); *Lancaster*, 85 F. Supp. 3d at 1344 (noting that open and obvious conditions are "discernible through common sense and the ordinary use of eyesight").  Courts therefore "evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective." *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018).

     1.  Carnival Had No Duty to Warn the Plaintiff of Any Crowd.

As already discussed, there is no evidence in the record to support the existence of a crowd in this case.  Moreover, Carnival had no duty to warn the Plaintiff about the few individuals standing before or after her in line for the ballot box because "there is nothing inherently dangerous about standing in line." *Fuentes*, 2020 WL 6276299, at *5.  Accordingly, the Defendant owed no duty, as a matter of law, to warn Plaintiff about any alleged but non-existent crowd.  Carnival is therefore entitled to summary judgment on Plaintiff's claim that Carnival negligently failed to warn her of a crowd.

     2.  Carnival Had No Duty to Warn the Plaintiff About the Staircase

The Plaintiff also contends that Carnival was negligent for failing to warn her about the dangerous condition of the staircase in the Normandie Lounge, which she alleges was not properly "placed and/or marked."  ECF No. 4 at ¶ 12.  Carnival is entitled to summary judgment on Plaintiff's theory because: (1) there is no evidence that Carnival had actual or constructive notice that the staircase was unreasonably dangerous or hazardous; and (2) Carnival had no duty to warn the Plaintiff about the staircase because the staircase was open and obvious.

     a.  *There Is No Evidence That Carnival Had Notice of Any Unreasonably Dangerous Condition of the Staircase.*

As previously discussed, *see supra*, Carnival did not have actual or constructive notice that the staircase in the Normandie Lounge presented a danger or hazard to its passengers.  Because

Carnival did not have notice of such a dangerous condition, it had no duty to warn the Plaintiff that the staircase presented a danger. *See, e.g.*, *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) ("[I]n order to have a duty to warn of a danger, the cruiseline must have 'actual or constructive notice of the unsafe condition.'") (quoting *Keefe*, 867 F.2d at 1322); *Guevara*, 920 F.3d at 720 n.5 ("An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious."). As a result, Carnival is entitled to summary judgment on the claim that it negligently failed to warn the Plaintiff about the staircase.

> b. *Carnival Did Not Have or Breach a Duty to Warn the Plaintiff About the Staircase Because the Staircase Was Open and Obvious.*

Carnival argues that because the alleged danger posed by the placement or marking of the staircase was open and obvious and actually perceived by the Plaintiff, it owed no duty to warn the Plaintiff about the staircase. ECF No. 104 at 10-11. Indeed, "there is no duty to warn of open and obvious dangers." *Horne*, 741 F. App'x at 608. Thus, even assuming that the Plaintiff had established the unreasonably dangerous condition of the staircase and that Carnival had notice of the same, the flared staircase with its curved base was open and obvious, so the Defendant did not have a duty to warn the Plaintiff about the staircase. *See, e.g.*, *Krug*, 745 F. App'x at 866-67 ("Defendant did not breach its duty of reasonable care by failing to warn Plaintiff of a condition of which she, or a reasonable person in her position, would be aware."); *Horne*, 741 F. App'x at 608; *see also Leroux v. NCL (Bah.) Ltd.*, 743 F. App'x 407, 409 (11th Cir. 2018) ("[F]ederal courts need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger.").

Although the Plaintiff argues that she did not see the curved base of the staircase at the time of her fall because "a bunch of women" were standing in her way (ECF No. 103-1 at 50-51), whether a condition is open and obvious is not considered from the "subjective standpoint of what

[the] Plaintiff actually perceived," but from the standpoint of an objectively reasonable person under the circumstances. *Lancaster*, 85 F. Supp. 3d at 1344 n.3. The Surveillance Video and photographs of the Normandie Lounge show that the flared staircase was prominently positioned at the center of the stage and was visible and obvious to anyone who approached it. *See* ECF No. 102-1. Indeed, the flared structure of the staircase with its curved base was visible and apparent, and the Plaintiff actually saw the staircase and walked around its flared based when she approached the ballot box on the stage. ECF No. 102-1; ECF No. 103-1 at 48-51; *see also* ECF No. 109-3 at 1, 3-5; ECF No. 109-2 at 2. There was no one between her and the staircase as she walked around it. ECF No. 102-1. Other individuals in the Lounge who approached the center of the stage were also able to successfully navigate around the curved base of the flared staircase and avoid any fall or collision with the staircase. *Id.* There is also no evidence that the staircase or its curved base was in any way obscured or in any way indiscernible. In fact, although the Plaintiff asserts that she did not see the curved base of the staircase at the time of her fall, she concedes that she had no difficulty seeing the staircase and was aware of its presence, but that she "wasn't looking at much because [she] knew that [she] did not have to go up the staircase," she "didn't pay attention" to the side of the staircase, and she did not see the bottom of the staircase "[b]ecause [she] wasn't looking down." ECF No. 103-1 at 48, 51, 54.

Given the incontrovertible video and still images of the staircase, as well as the Plaintiff's uneventful walk around the curved base of the flared staircase mere moments before she turned around and fell at the staircase, there is no genuine issue of material fact in this case as to the open and obvious nature of the staircase, foreclosing any duty to warn by Carnival. *Leroux*, 743 F. App'x at 409-10 (finding no duty to warn when a reasonable person in the plaintiff's position would have been aware of a threshold where the plaintiff was actually aware of the threshold and

previously passed over it without incident); *Roberts*, 2021 WL 3887819, at *6 (granting summary judgment when the plaintiff "saw the subject threshold as she approached it and could have seen it as she stepped over it, if she had looked down"); *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41-42 (S.D. Fla. April 25, 1986) (granting summary judgment where a shower ledge was found to be open and obvious, even though a shower curtain concealed the ledge, because the plaintiff was aware of the existence of the ledge prior to the incident and it "was, or should have been, obvious to [plaintiff] by the ordinary use of her senses"), *aff'd*, 808 F.2d 60 (11th Cir. 1986). Accordingly, because Carnival had not duty to warn the Plaintiff about the staircase because of its open and obvious nature, summary judgment is appropriate as to Plaintiff's claim that Carnival negligently failed to warn her about the staircase.

## IV.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Defendant's Motion for Summary Judgment (ECF No. 104) be **GRANTED**.

Within fourteen (14) days from the date of receipt of this Report and Recommendation, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge.  Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 8th day of

August, 2024.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Kathleen M. Williams
       Counsel of Record